**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| WANXU DONG, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | |
| v. | ) | |
| | ) | |
| DEUTSCHE BAHN AG, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**COMPLAINT FOR REVERSE DOMAIN NAME
HIJACKING UNDER THE ANTI-CYBERSQUATTING
AND PROTECTION ACT – INJUNCTIVE RELIEF SOUGHT**

This is a suit by Plaintiff, Wanxu Dong ("Plaintiff") against Defendant, Deutsche Bahn AG ("Defendant"), for reverse domain name hijacking in violation of the Anti-Cybersquatting and Protection Act ("ACPA").

**INTRODUCTION**

1.      Defendant is a German state-owned railway company and is the largest railway company in Germany.

2.      Plaintiff offers railway logistics services.

3.      Defendant filed actions under the Uniform Domain Name Dispute Resolution Policy ("UDRP") to disrupt Plaintiff's business.

4.      Plaintiff is the rightful owner of the domain name <dbobahnoperator.com>, which he legitimately uses to operate his railway freight transportation handling business under the name DBO Bahnoperator GmbH.

5.      Despite Plaintiff's lawful use the domain name <dbobahnoperator.com>, Defendant, a railway company owned by the Federal Republic of Germany, initiated a UDRP proceeding seeking transfer of Plaintiff's domain name <dbobahnoperator.com>.

6.      On February 22, 2019, the UDRP administrative panel erroneously ordered the transfer of the domain name <dbobahnoperator.com> from Plaintiff to Defendant.

7.      Plaintiff accordingly bring this reverse domain name hijacking action under the ACPA, 15 U.S.C. § 1114(2)(D)(v), to enjoin the transfer of the domain name to Defendant.

## PARTIES

8.      Plaintiff, Wanxu Dong, is a Chinese citizen and a resident of China.

9.      Defendant, Deutsche Bahn AG, is a German Aktiengesellschaft or private joint-stock company headquartered in Berlin, Germany.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction because this action arises under the ACPA, which Congress incorporated into the Trademark Act of 1946, as amended, 15 U.S.C. §§ 1051 *et seq.* (the "Lanham Act").  This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 *et seq.*, and 28 U.S.C. §§ 1331 and 1338 because this action involves a federal question arising under 15 U.S.C. §§ 1114(2)(D)(v) and 1125(d)(1).

11.      This Court has personal jurisdiction over Defendant because Defendant expressly consented to the Court's personal jurisdiction.  Specifically, Defendant consented to jurisdiction of this Court contractually in ¶(4) of the UDRP Policy and by filing a UDRP complaint with the World Intellectual Property Organization ("WIPO").  Defendant expressly agreed to jurisdiction where the domain name registrar's principal place of business is located.  The registrar of this domain name is Network Solutions, LLC, which has a principal place of business in Jacksonville, Florida.

12.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (c) because Defendant is subject to personal jurisdiction in this judicial district, and under 28 U.S.C. § 1391(c)(2), is deemed to reside in this district.  Venue is also proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(3) in the event Defendant is not said to "reside" in this judicial district, because there is no other district in which this action may otherwise be brought and Defendant is subject to the Court's personal jurisdiction with respect to this action.

## FACTS

### Plaintiff and his Railway Transportation Companies

13.    Plaintiff, Wanxu Dong, is a Chinese citizen and business owner.  He is the founder of several companies in the railway shipping industry, including Beijing Trans Eurasia International Logistics Co., Limited ("Beijing Trans Eurasia"), a multimodal transportation company, and DBO Bahnoperator GmbH, a railway logistics company.

14.    The railway shipping industry has recently seen significant growth as the demand for goods between Asia and Europe has increased.  Shipping by railway is efficient and economical as it is faster than water transport and cheaper than transport by air.

15.    To ship products between Asia and Europe, shipping companies like Beijing Trans Eurasia must work with a logistics handling company, like DBO Bahnoperator GmbH, to manage the complexities of transportation between Asia and Europe.

16.    A logistics company is crucial for managing the technical procedures of transport by railway.  At country borders, for example, a logistics company will ensure that train cargo is lifted from one train to another to account for different rail sizes in different countries.

17.    Through Beijing Trans Eurasia, Plaintiff transports goods between Asia and Europe via railway.

18.     Through DBO Bahnoperator GmbH, Plaintiff manages the transport of goods for itself and others between Asia and Europe.  DBO Bahnoperator GmbH is a Gesellschaft mit beschränkter Haftung or German limited liability company.  DBO Bahnoperator GmbH is the official company name as registered in Germany.

19.      Plaintiff obtained the domain name <dbobahnoperator.com> (the "Hijacked Domain Name") to offer and advertise DBO Bahnoperator GmbH's services.  Attached as Exhibit A is a screenshot of the website for the Hijacked Domain Name as of the date of filing of this Complaint.

20.     The Hijacked Domain Name is identical to Plaintiff's official corporate name, absent the generic "GmbH" and with the addition of ".com."

21.     Plaintiff registered the Hijacked Domain Name on April 27, 2018.

### Defendant – Deutsche Bahn AG

22.     On information and belief, Defendant is a holding company whose subsidiaries, including DB Cargo AG and DB Schenker AG, offer passenger transportation and logistics services.

23.     On information and belief, Defendant is headquartered in Berlin, Germany and is a private joint-stock company, with the Federal Republic of Germany as its sole shareholder.

24.     On information and belief, Defendant operates its core business, namely, the transport of passengers and goods and operation of the majority of the German railway network, through its subsidiaries.

25.     On information and belief, Defendant also operates with several subsidiary and affiliate companies in the rail freight transport business, such as DB Cargo Eurasia GmbH, formerly named Trans-Eurasia Logistics GmbH ("TEL").

## The Parties' Failed Business Relationship

26.    The parties' relationship began before DBO Bahnoperator GmbH was formed.  At the time, Plaintiff did not himself own a company offering railway logistics services.  Plaintiff thus sought assistance with railway shipping between Asia and Europe for his Beijing Trans Eurasia company.

27.    To satisfy this need, Plaintiff began working with TEL to facilitate the shipping of goods for his business.

28.    On information and belief, TEL was a joint-venture between Defendant and a Russian railway company.  TEL provided inter-country railway logistics services for freight transportation between Asia and Europe.

29.    Plaintiff's company hired Defendant and TEL to ship goods between Asia and Europe via railway.  On information and belief, Plaintiff ultimately became TEL's largest customer, comprising approximately 90% of TEL's business.

30.    Plaintiff eventually, however, became dissatisfied with the quality of Defendant's services through TEL.  Many shipments were slowed or delayed, for example, causing significant damage to Plaintiff's business.

31.    As a result of Plaintiff's dissatisfaction with Defendant's services through TEL, Plaintiff formed his own railway freight logistics company, DBO Bahnoperator GmbH.  Plaintiff tried to maintain the business relationship between TEL/Defendant and Beijing Trans Eurasia.  Due to the continuously worsening performance of Defendant's railway services through TEL, however, by the summer of 2018, Plaintiff terminated the relationship with TEL/Defendant.

32.     Rather than continuing to deal with Defendant's inferior services through TEL, Plaintiff transitioned his shipments for Beijing Trans Eurasia from TEL to his own company, DBO Bahnoperator GmbH.

33.     Formation of DBO Bahnoperator GmbH took away TEL's largest customer. Today, DBO Bahnoperator GmbH works with smaller train operators that are not affiliated with Defendant or TEL.

### Defendant Challenges Plaintiff's Registration and Use of the Hijacked Domain Name

34.     Since Plaintiff formed DBO Bahnoperator GmbH, Defendant has attempted to disrupt DBO Bahnoperator's business operations.

35.     In one such attempt, Defendant initiated a UDRP proceeding with WIPO, specifically requesting a transfer of the Hijacked Domain Name from Plaintiff to Defendant, WIPO Case No. D2018-2235 (the "WIPO Proceeding").

36.     The amended complaint, which fully replaced the original complaint in the WIPO Proceeding, was filed on October 26, 2018.  A true and correct copy of the amended complaint filed in the WIPO Proceeding is attached as Exhibit B.

37.     As a basis for its amended complaint in the WIPO Proceeding, Defendant relied on its purported trademark rights in the logo .  Defendant claimed it owns rights for the logo  worldwide.

38.     Defendant owns a United States federal trademark registration of the logo  for its railway transportation services, Reg. No. 5,343,161.

39.     Defendant does not own a federal trademark registration for the letters "DB" alone.

40.     "Deutsche Bahn" literally translates to "German train."  Thus, Defendant's business name "Deutsche Bahn" is generic for the services it offers, namely, railway transport from Germany.

41.     Defendant does not own a trademark registration of DEUTSCHE BAHN in the United States or Germany.

42.     In its amended complaint filed in the WIPO Proceeding, Defendant alleged, among other things, that the Hijacked Domain Name, <dbobahnoperator.com> was confusingly

similar to Defendant's logo, that Plaintiff had no rights or legitimate interest in the domain name because DBO Bahnoperator GmbH is a competitor of Defendant, and that by operating a competitive business, Plaintiff through DBO Bahnoperator was acting in bad faith. *See* Exhibit B.

43.     Plaintiff filed a response to Defendant's amended complaint in the WIPO Proceeding on November 29, 2018.  A true and correct copy of Plaintiff's response is attached hereto as Exhibit C.

44.     In his response, Plaintiff explained the following:

        a.  The parties' prior business relationship and why it had failed;

        b.  That Plaintiff's domain name, <dbobahnoperator.com>, is not confusingly

similar to Defendant's logo because Defendant has no rights in DB alone, there are several third-party uses of marks and domain names

containing DB, and Plaintiff's domain name is distinguishable from the

logo ;

    c. That DBO Bahnoperator GmbH is a legitimate business operating through
the domain name <dbobahnoperator.com>, which is simply a domain
name containing DBO Bahnoperator's legal corporate name; and

    d. The Plaintiff did not register the Hijacked Domain Name in bad faith.

45.    Nevertheless, on February 22, 2019, WIPO erroneously ordered a transfer of the
Hijacked Domain Name from Plaintiff to Defendant.

46.    This Court is not bound by WIPO's decision.

### The UDRP Decision and Threat of Implementation

47.    According to the UDRP Policy ¶4(k), if a WIPO administrative panel decides that
a domain name registration should be cancelled or transferred, the registrar of that domain name
must wait ten (10) business days before implementing that decision to allow a domain name
registrant to provide official documentation (such as a copy of a complaint, file-stamped by the
clerk of the court) evidencing that the registrant commenced a lawsuit.

48.    Accordingly, if the registrar of the Hijacked Domain Name does not receive
notice that Plaintiff filed this Complaint by March 8, 2019, the registrar, Network Solutions,
LLC, will transfer the Hijacked Domain Name to Defendant.  Such a transfer would harm
Plaintiff's business.

49.    Plaintiff has filed this Complaint on March 6, 2019, within 10 business days of
the date of decision in the WIPO Proceeding.

50.     Plaintiff's counsel will immediately notify WIPO, the registrar of the domain name (Network Solutions, LLC), and the Defendant of the filing of this lawsuit upon receipt of a file-stamped copy of this Complaint.

**COUNT I**

**REVERSE DOMAIN NAME HIJACKING**
**15 U.S.C. § 1114(2)(D)(v)**

51.     Plaintiff re-alleges Paragraphs 1-50 as if fully set forth herein.

52.     Plaintiff is the registrant of the Hijacked Domain Name.

53.     Plaintiff has been the registrant of the Hijacked Domain Name continuously since April 27, 2018.

54.     The Hijacked Domain Name was subject to a UDRP proceeding whereby the Hijacked Domain Name was locked.

55.     In its February 22, 2019 administrative panel decision, WIPO ordered that the registrar of the Hijacked Domain Name transfer the domain name from Plaintiff to Defendant.

56.     Defendant prompted the Hijacked Domain Name to be locked and transferred by filing a UDRP complaint and pursuing the WIPO Proceeding.

57.     The Hijacked Domain Name is not identical or confusingly similar to a distinctive mark or identical, confusingly similar, or dilutive of a famous mark, and the Hijacked Domain Name was not registered by Plaintiff with a bad faith intent to profit.

58.     Plaintiff believed and had a reasonable ground to believe that his use of the Hijacked Domain Name was fair use or otherwise lawful.

59.     Plaintiff's use and registration of the Hijacked Domain Name is thus not unlawful under the ACPA, 15 U.S.C. § 1125(d)(1)(A).

60.      If the Hijacked Domain Name is transferred to Defendant, Plaintiff will be unable to lawfully operate his business under the Hijacked Domain Name.

61.      Accordingly, Plaintiff has suffered and is likely to continue to suffer irreparable injury, and thus is entitled to injunctive relief under § 1114(2)(D)(v).

62.      This is an exceptional case within the meaning of Section 35 of the Lanham Act, 15 U.S.C. § 1117, warranting an award of Plaintiff's attorneys' fees.

63.      After Plaintiff's filing of this Complaint with the Court, Plaintiff's counsel will provide notice of the same by email upon the Defendant, its attorneys, WIPO, and the registrar for the Hijacked Domain Name, Network Solutions, LLC.

64.      This Complaint and a properly issued Summons shall be served upon Defendant in due course.


## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief against Defendant and respectfully requests an entry of judgment as follows:

1.      For Permanent Injunction Order against enforcement of the UDRP decision of February 22, 2019, which decision ordered transfer of the Hijacked Domain Name from Plaintiff to Defendant.

2.      Directing that Defendant pay Plaintiff the costs of this action and his reasonable attorneys' fees incurred herein as authorized by law; and

3.    Granting Plaintiff such other and further relief as this Court deems just and

proper.

DATED: March 6, 2019                    Respectfully submitted,

                                        */s/Crystal T. Broughan*
                                        Crystal T. Broughan, Esquire
                                        Florida Bar No.: 0863343
                                        MARKS GRAY, P.A.
                                        Post Office Box 447
                                        Jacksonville, Florida 32201
                                        Telephone: (904) 398-0900
                                        Facsimile:  (904) 399-8440
                                        Email:  cbroughan@marksgray.com

                                        -AND-

                                        Ashly I. Boesche (*pro hac vice* to be filed)
                                        Illinois Bar No.: 6289801
                                        aib@pattishall.com
                                        Janet A. Marvel (*pro hac vice* to be filed)
                                        Illinois Bar No.: 6201597
                                        jam@pattishall.com
                                        Kristine A. Bergman (*pro hac vice* to be filed)
                                        Illinois Bar No.: 6320297
                                        kab@pattishall.com
                                        Pattishall, McAuliffe, Newbury, Hilliard &
                                            Geraldson LLP
                                        200 South Wacker Drive, Suite 2900
                                        Chicago, Illinois 60606
                                        Telephone: (312) 554-8000
                                        Facsimile: (312) 554-8015

                                        *Attorneys for Plaintiff, Wanxu Dong*