## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

WANXU DONG,           )
                        )
      Plaintiff,       )   Civil Action No. 3:19-cv-00275-MMH-JRK
                        )
      v.            )
                        )
DEUTSCHE BAHN AG,    )
                        )   Judge Marcia Morales Howard
      Defendant.    )
                        )   Magistrate Judge James R. Klindt
                        )

## PLAINTIFF'S RENEWED MOTION FOR
## DEFAULT JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Federal Rule of Civil Procedure 55, Plaintiff, Wanxu Dong ("Dong"), hereby moves this Court for a Default Judgment against Defendant, Deutsche Bahn ("DB"). On November 12, 2020, the Clerk of the Court entered Default against DB. Dkt. No. 31.

Now that the Clerk has entered Default, Dong respectfully requests that this Court enter Default Judgment. The reasons for Dong's motion are set forth below.

## MEMORANDUM OF LAW

### I.    INTRODUCTION

DB is a German state-owned railway company and is the largest railway company in Germany. Complaint, Dkt. No. 1, ¶ 1. Dong offers competitive railway logistics services. *Id.* at ¶ 2. Threatened by Dong's competition, DB filed several actions in Europe and under the Uniform Domain Name Dispute Resolution Policy ("UDRP") to disrupt Dong's business. *Id.* at ¶¶ 3, 5.

One such UDRP action concerned <dbobahnoperator.com>, of which Dong is the rightful owner. *Id.* at ¶¶ 4, 5. Despite Dong's lawful use the domain name <dbobahnoperator.com>, the

UDRP administrative panel erroneously ordered the transfer of the domain name <dbobahnoperator.com> from Dong to DB.  *Id*. at ¶ 6.  Hence, DB "hijacked" Dong's domain name.  Dong thus brought a reverse domain name hijacking action under the ACPA, 15 U.S.C. § 1114(2)(D)(v), to enjoin the transfer of the domain name to DB.  *Id.* at ¶ 7.

As DB is a foreign entity, Dong sent it a request for waiver of service.  Motion for Extension of Time to Effectuate Service, Dkt. No. 10, ¶¶ 2, 3.  DB received the waiver and, indeed, DB's United States counsel contacted Dong's United States counsel.  *Id*. at ¶¶ 3-8.  But DB did not agree to the waiver of service, thus forcing Dong to engage in the time-consuming and expensive process of serving DB under the Hague Convention.  *Id*. at ¶¶ 9, 10.

DB was served on January 9, 2020, but the German court did not complete or mail the certificate of service for many months, so Dong did not receive notice of service until July 2020.  Notice of Service on Defendant, Dkt. No. 24, ¶ 9.  Although DB was served over nine months ago, it has not filed an appearance in this action nor submitted any pleading responsive to Dong's Complaint.  On November 12, 2020, the Clerk of the Court entered Default against DB.  Dkt. No. 31.  Accordingly, it is appropriate for this Court to enter judgment.

## II.     STATEMENT OF THE FACTS

### A.     Dong and his Railway Logistics Business.

Plaintiff, Wanxu Dong, is a Chinese citizen and business owner.  Complaint, ¶ 13.  He is the founder of several companies in the railway shipping industry, including Beijing Trans Eurasia International Logistics Co., Limited ("Beijing Trans Eurasia"), a multimodal transportation company, and DBO Bahnoperator GmbH ("DBO Bahnoperator"), a railway logistics company.  *Id.*

The railway shipping industry has recently seen significant growth as the demand for goods between Asia and Europe has increased.  *Id*. at ¶ 14.  Shipping by railway is efficient and

economical as it is faster than water transport and cheaper than transport by air. *Id*. To ship

products between Asia and Europe, shipping companies like Beijing Trans Eurasia must work

with a logistics handling company, like DBO Bahnoperator, to manage the complexities of

transportation between Asia and Europe. *Id*. at ¶ 15. A logistics company is crucial for

managing the technical procedures of transport by railway. *Id*. at ¶ 16.

Through Beijing Trans Eurasia, Dong transports goods between Asia and Europe via

railway. *Id.* at ¶ 17. Through DBO Bahnoperator, Dong manages the transport of goods for

itself and others between Asia and Europe. *Id*. at ¶ 18.

Dong purchased the domain name <dbobahnoperator.com> (the "Hijacked Domain

Name") to offer and advertise DBO Bahnoperator's services. *Id*. at ¶ 19. Attached as Exhibit A

to the Complaint is a screenshot of the website for the Hijacked Domain Name. The Hijacked

Domain Name is identical to Dong's official corporate name, absent the generic "GmbH" and

with the addition of ".com." *Id*. at ¶ 20. Dong registered the Hijacked Domain Name on April

27, 2018. *Id*. at ¶ 21.

### B.    DB and its Railway Services.

DB is a holding company whose subsidiaries, including DB Cargo AG and DB Schenker

AG, offer passenger transportation and logistics services. *Id.* at ¶ 22. DB is headquartered in

Berlin, Germany and is a private joint-stock company, with the Federal Republic of Germany as

its sole shareholder. *Id*. at ¶ 23.

DB operates its core business, namely, the transport of passengers and goods and

operation of the majority of the German railway network, through its subsidiaries. *Id*. at ¶ 24.

DB also operates with several subsidiary and affiliate companies in the rail freight transport

business, such as DB Cargo Eurasia GmbH, formerly named Trans-Eurasia Logistics GmbH

("TEL"). *Id*.

**C.      The Parties' Failed Business Relationship.**

The parties' relationship began before DBO Bahnoperator was formed.  *Id*. at ¶ 26.  At the time, Dong did not himself own a company offering railway logistics services.  *Id*.  Dong thus sought assistance with railway shipping between Asia and Europe for his Beijing Trans Eurasia company.  *Id*.  To satisfy this need, Dong began working with TEL to facilitate the shipping of goods for his business.  *Id*. at ¶ 27.  TEL was a joint-venture between DB and a Russian railway company.  *Id*. at ¶ 28.  TEL provided inter-country railway logistics services for freight transportation between Asia and Europe.  *Id*.

Dong's company hired DB and TEL to ship goods between Asia and Europe via railway.  *Id*. at ¶ 29.  Dong ultimately became TEL's largest customer, comprising approximately 90% of TEL's business.  *Id*.  Dong eventually, however, became dissatisfied with the quality of DB's services through TEL.  *Id*. at ¶ 30.  Many shipments were slowed or delayed, for example, causing significant damage to Dong's business.  *Id*.

As a result of Dong's dissatisfaction with DB's services through TEL, Dong formed his own railway freight logistics company, DBO Bahnoperator.  *Id*. at ¶ 31.  Dong tried to maintain the business relationship between TEL/DB and Beijing Trans Eurasia, but was forced to terminate the relationship in the summer of 2018.  *Id*.  Rather than continuing to deal with DB's inferior services through TEL, Dong transitioned his shipments for Beijing Trans Eurasia from TEL to his own company, DBO Bahnoperator.  *Id*. at ¶ 32.

**D.      DB's Challenge to Dong's Ownership of his Domain Names.**

To promote and advertise his company's services, Dong registered the <dbobahnoperator.com> domain name.  *Id*. at ¶ 19.  The Hijacked Domain Name was identical to his company name and it was used to legitimately operate his railway freight transportation business.  *Id*. at ¶ 20.  Despite Dong's lawful use of the Hijacked Domain Name, DB, initiated a

UDRP proceeding seeking a transfer of the Hijacked Domain Name. *Id.* at ¶ 35. Indeed, since Dong formed DBO Bahnoperator, DB has attempted to disrupt DBO Bahnoperator's business operations. *Id.* at ¶ 34. On February 22, 2019, the UDRP administrative panel erroneously ordered the transfer of the Hijacked Domain Name from Dong to DB. *Id.* at ¶ 45.

As a basis for its complaint in the WIPO Proceeding, DB relied on its purported

trademark rights in the logo **DB**. *Id.* at ¶ 37. DB claimed it owns rights for the logo

**DB** worldwide. *Id.* DB owns a United States federal trademark registration of the logo

**DB** for its railway transportation services, Reg. No. 5,343,161. *Id.* at ¶ 38. DB does not own a federal trademark registration for the letters "DB" alone. *Id.* at ¶ 39.

"Deutsche Bahn" literally translates to "German train." *Id.* at ¶ 40. Thus, DB's business name "Deutsche Bahn" is generic for the services it offers, namely, railway transport from Germany. *Id.* DB does not own a trademark registration of DEUTSCHE BAHN in the United States or Germany. *Id.* at ¶ 41.

In its complaint filed in the WIPO Proceeding, DB alleged, among other things, that the

**DB**

Hijacked Domain Name, <dbobahnoperator.com>, was confusingly similar to DB's logo, that Dong had no rights or legitimate interest in the domain name because DBO Bahnoperator is a competitor of DB, and that by operating a competitive business, Dong through DBO Bahnoperator was acting in bad faith. *Id.* at 42; *see* Exhibit B of the Complaint.

Dong filed a response to DB's amended complaint in the WIPO Proceeding on November 29, 2018. *Id*. at ¶ 43. A true and correct copy of Dong's response is attached as Exhibit C of the Complaint. In his response, Dong explained the following:

1. The parties' prior business relationship and why it had failed;

2. That Dong's domain name, <dbobahnoperator.com>, is not confusingly similar to DB's  logo because DB has no rights in DB alone, there are several third-party uses of marks and domain names containing DB, and Dong's domain name is distinguishable from the logo

;

3. That DBO Bahnoperator is a legitimate business operating through the domain name <dbobahnoperator.com>, which is simply a domain name containing DBO Bahnoperator's legal corporate name; and

4. The Dong did not register the Hijacked Domain Name in bad faith.

*Id*. at ¶ 44.

Nevertheless, on February 22, 2019, WIPO erroneously ordered a transfer of the Hijacked Domain Name from Dong to DB. *Id*. at ¶ 45.

According to the UDRP Policy ¶4(k), if a WIPO administrative panel decides that a domain name registration should be cancelled or transferred, the registrar of that domain name must wait ten (10) business days before implementing that decision to allow a domain name registrant to provide official documentation (such as a copy of a complaint, file-stamped by the clerk of the court) evidencing that the registrant commenced a lawsuit. *Id*. at ¶ 47.

Dong filed his Complaint on March 6, 2019, within 10 business days of the date of decision in the WIPO Proceeding. *See* Complaint, Dkt. No. 1. Shortly thereafter, Dong's counsel notified WIPO, the registrar of the Hijacked Domain Name (Network Solutions, LLC), and DB of the filing of this lawsuit after receiving a file-stamped copy of the Complaint.

**E.      Dong's Action and Attempted Service on DB.**

On March 6, 2019, Dong filed his Complaint for Reverse Domain Name Hijacking Under the Anti-Cybersquatting and Protection Act, 15 U.S.C. § 1114(2)(D)(v), to enjoin the transfer of the domain name to DB. *See* Complaint, Dkt. No. 1.

On March 21, 2019, Dong sent DB a request for waiver of service pursuant to Fed. R. Civ. P. 4(d). Motion for Extension of Time to Effectuate Service, Dkt. No. 10, ¶ 3. The request was sent to DB and its German representatives by e-mail and Federal Express, which receipt was confirmed. *Id*. With his request, Dong attached a copy of the Complaint and corresponding exhibits. *Id*. As Dong explained in his request, under the Federal Rules of Civil Procedure, DB was required to return to Dong a signed waiver of service by May 20, 2019. *Id*.

On April 8, 2019, Dong received an e-mail from Susan Smith of the law firm of Hunton Andrews Kurth LLP of Washington, DC. *Id*. at ¶ 4. Ms. Smith advised counsel for Dong that her firm had been retained by DB. *Id*. Counsel for Dong responded the same day and asked Ms. Smith if she had received the request for waiver of service. *Id*. at ¶ 5. On April 16, 2019, after Ms. Smith did not respond, counsel for Dong sent a follow up e-mail. *Id*. at ¶ 6. On April 18, 2019, Ms. Smith responded with a request for more information on the waiver of service. *Id*. at ¶ 7. That same day, counsel for Dong provided Ms. Smith with a copy of Dong's March 21, 2019 request for waiver of service. *Id*. at ¶ 8.

After that, and still to this day, counsel for Dong has not received any further communication from Ms. Smith or any other United States representative of DB in connection

with the present case, including on or before the May 20, 2019 deadline to accept waiver of service.  *Id*. at ¶ 9.

Dong then began the process of serving DB pursuant to Fed. R. Civ. P. 4(j)(1) and 28 U.S.C. § 1608.  *Id*. at ¶ 10.  To effect service under the Hague Convention, the German Central Authority requires that a plaintiff translate the complaint and accompanying documents into German.  Third Motion for Extension of Time to Effectuate Service, Dkt. No. 10, ¶ 3.  Dong promptly translated the Complaint and exhibits, which consisted of over 400 pages, from English and Chinese into German.  *Id*. at ¶ 4.

In July 2019, Dong hired a third-party translation company to translate the 400 pages of the Complaint and corresponding exhibits spending approximately $15,000 for the translation services.  *Id*.  It took over four months to complete the translation.  *Id*.  During this time, Dong's counsel assisted the translation company and reviewed proposed drafts of the translated documents.  *Id*.  The translation was completed by November 12, 2019.  *Id*.

Dong also hired a third-party, APS International, Ltd. ("APS") to serve DB in Germany. *Id*. at ¶ 5.  Dong moved to appoint APS as a special process server, which this Court granted on November 14, 2019. (Dkt. Nos. 14 and15).

On November 27, 2019, APS sent English and translated copies of the Complaint, corresponding exhibits, alias summons (Dkt. No. 18), Order on Motion for Appointment of APS, International, Ltd. as Special Process Server (Dkt. No. 15), and completed the necessary forms that were provided to the designated Central Authority for Berlin, Germany.  *Id*. at ¶ 6.  APS estimated in November 2019 that the entire process to serve and confirm service in Germany would take at least 12-16 weeks.  *Id*. at ¶ 8.

In early March 2020, Dong checked on the status of service with the Central Authority for Berlin. Notice of Service on Defendant, Dkt. No. 24, ¶ 7. It reported that documents had been provided to the local court in Berlin-Mitte. *Id*. Dong had not received any further information from the Berlin-Mitte local court. *Id*. Shortly thereafter, in mid-March 2020, much of the world – including the German government and courts – shut down or suspended operations due to the COVID-19 pandemic. *Id*. at ¶ 8.

Unbeknownst to Dong, however, service was completed on January 9, 2020. *Id*. at ¶ 9. The local court in Berlin-Mitte did not complete the certificate of service, however, until May 25, 2020. *Id*. After the certificate was completed, the local court mailed a copy of the certificate and copies of the original and translated Complaint from Germany to APS. *Id*. at ¶ 10. The documents were received the week of July 20, 2020. *Id*.

APS proceeded to translate the certificate of service and provided counsel for Dong with a copy of the translated certificate on July 24, 2020. *Id*. at ¶ 11.

On July 29, 2020, Dong file a notice with the Court notifying it of the completed service on DB. Dkt. No. 24.

Dong and DB have been engaged in litigation in Germany for several years concerning various business matters, trade name usage, and domain name ownership. On July 8, 2020, the parties had a hearing in Hamburg, Germany, regarding one of the legal proceedings. During the hearing, the court urged the parties to consider settlement. During those negotiations, DB, through its counsel, acknowledged the existence of the present case in Jacksonville, Florida.

III.     ARGUMENT

   A.     **Standard for Motion for Default Judgment.**

   The district court may enter a default judgment against a properly served defendant who

fails to defend or otherwise properly appear pursuant to Federal Rule of Civil Procedure

55(b)(2); *DirecTV, Inc. v. Griffin,* 290 F.Supp.2d 1340, 1343 (M.D.Fla.2003).

   "In determining whether or not to enter a default judgment, a court should consider (1)

the amount in controversy; (2) whether material issues of fact or issues of substantial public

importance exist; (3) whether the default is largely technical or substantive in nature; (4) whether

the plaintiff has been substantially prejudiced by the delay involved; and (5) whether the grounds

for default are clearly established or are in doubt."  10A Charles A. Wright, Arthur R. Miller &

Mary K. Kane, *Federal Practice and Procedure,* § 2685 at 32–36 (3d ed. 1998) ("Wright &

Miller") (internal citations omitted).

   B.     **Default Judgment is Appropriate Because DB has no Excusable Reason to**
          **Ignore the Complaint.**

   In this case, all of the factors for determining whether to enter a default judgment favor

Dong.  First, the "amount in controversy" favors default judgment because Dong seeks a

declaration that he is the rightful owner of the Hijacked Domain Name along with costs and

attorneys' fees.  He has not pled a claim for monetary relief.  Second, the only issue in the case is

that DB hijacked the domain name and it should be released to Dong.  While the domain name is

certainly important to Dong's business, the case does not implicate issues of public

importance.  Further, the matter is not fact-intensive.  Third, the default is not technical: DB has

known about this proceeding for over a year and a half and has shown no intent to defend this

action.  Fourth, Dong has been substantially prejudiced by the process.  Dong had to undergo the

expensive, time consuming process of serving the Complaint through the Hague Convention and

file multiple extensions of time and notices with this Court. Further, his use of the Hijacked

Domain Name was suspended, thus impeding his business operations through the website at the

domain name. All of this caused significant business losses and attorneys' fees and costs, while

DB did nothing, despite knowing about this action. In contrast, ruling that the Hijacked Domain

Name belongs to Dong would require *no action* by DB as a default judgment would simply

prevent the transfer of the Hijacked Domain Name by Network Solutions to DB. Finally, the

fact that DB has been aware of this action since at least as early as April, 2019, and yet has

ignored its obligation to answer the Complaint for months satisfies the fifth and final reason that

all the grounds for default are clearly established.

### C. Dong's Allegations of Reverse Domain Name Hijacking are Taken as True.

As DB failed to timely respond to the Complaint, all of Dong's allegations, including its

claim for reverse-domain name hijacking under the ACPA, are taken as true. *See, e.g.*, *Bioclin*

*BV v. Multygyn USA, LLC*, 72 F. Supp. 3d 1288, 1291 (M.D. Fla. 2014) (holding that defendants'

failure to timely respond to the complaint served to admit the well plead allegations including the

violation of the ACPA). Dong's allegations support his claim for reverse domain name hijacking

and so judgment can be entered against DB.

## IV. CONCLUSION

For the foregoing reasons, Dong requests that this Court enter default judgment against

DB on Dong's claim for reverse domain name hijacking and enter an order enjoining DB from

enforcing the UDRP decision and ordering the domain name registrar to unlock the domain name

and not transfer the domain name to DB. Concurrently with this motion, Dong submits a

proposed order.

DATED: November 17, 2020          Respectfully submitted,

/Kristine Bergman/
Ashly I. Boesche (admitted *pro hac vice*)
Illinois Bar No.: 6289801
aib@pattishall.com
Janet A. Marvel (admitted *pro hac vice*)
Illinois Bar No.: 6201597
jam@pattishall.com
Kristine A. Bergman (admitted *pro hac vice*)
Illinois Bar No.: 6320297
kab@pattishall.com
Pattishall, McAuliffe, Newbury, Hilliard &
    Geraldson LLP
200 South Wacker Drive, Suite 2900
Chicago, Illinois 60606
Telephone: (312) 554-8000
Facsimile: (312) 554-8015

-AND-

Crystal T. Broughan, Esquire
Florida Bar No.: 0863343
MARKS GRAY, P.A.
Post Office Box 447
Jacksonville, Florida 32201
Telephone: (904) 398-0900
Facsimile:  (904) 399-8440
Email:  cbroughan@marksgray.com

*Attorneys for Plaintiff, Wanxu Dong*